NATIONAL BISCUIT COMPANY, INC. v. C. N. STROUD AND EARL FREEMAN TRADING AS STROUD'S FOOD CENTER.

(Filed 28 January, 1959.)

**Partnership § 5—**

Where there is a general partnership of two persons, without restrictions on the authority of either partner to act within the scope of the partnership business, one of the partners cannot, by notice to a third person that he would not be personally liable for goods thereafter sold the partnership in the ordinary course of the partnership business, relieve himself of liability for such goods thereafter ordered by the other partner while the partnership is a going concern. G.S. 59-39, G.S.

59-45, G.S. 59-48. Further, in this case the partner disaffirming liability was bound by the dissolution agreement to pay the partnership liabilities.

RODMAN, J., dissents.

APPEAL by defendant Stroud from *Parker (Joseph W.), J.,* June Civil Term, 1958, of CARTERET.

The case was heard in the Superior Court upon the following agreed statements of fact:

On 13 September 1956 the National Biscuit Company had a Justice of the Peace to issue summons against C. N. Stroud and Earl Freeman, a partnership trading as Stroud's Food Center, for the nonpayment of $171.04 for goods sold and delivered. After a hearing the Justice of the Peace rendered judgment for plaintiff against both defendants for $171.04 with interest and costs. Stroud appealed to the Superior Court: Freeman did not.

In March 1953 C. N. Stroud and Earl Freeman entered into a general partnership to sell groceries under the name of Stroud's Food Center. Thereafter plaintiff sold bread regularly to the partnership. Several months prior to February 1956 the defendant Stroud advised an agent of plaintiff that he personally would not be responsible for any additional bread sold by plaintiff to Stroud's Food Center. From 6 February 1956 to 25 February 1956 plaintiff through this same agent, at the request of the defendant Freeman, sold and delivered bread in the amount of $171.04 to Stroud's Food Center. Stroud and Freeman by agreement dissolved the partnership at the close of business on 25 February 1956, and notice of such dissolution was published in a newspaper in Carteret County 6-27 March 1956.

The relevant parts of the dissolution agreement are these: All partnership assets, except an automobile truck, an electric adding machine, a rotisserie, which were assigned to defendant Freeman, and except funds necessary to pay the employees for their work the week before the dissolution and necessary to pay for certain supplies purchased the week of dissolution, were assigned to Stroud. Freeman assumed the outstanding liens against the truck. Paragraph five of the dissolution agreement is as follows: "From and after the aforesaid February 25, 1956, Stroud will be responsible for the liquidation of the partnership assets and the discharge of partnership liabilities without demand upon Freeman for any contribution in the discharge of said obligations." The dissolution agreement was made in reliance on Freeman's representations that the indebtedness of the partnership was about $7,800.00 and its accounts receivable were about $8,000.00. The accounts receivable at the close of business actually

amounted  to  $4,897.41.

Stroud  has  paid  all  of  the  partnership  obligations  amounting  to
$12,014.45,  except  the  amount  of  $171.04  claimed  by  plaintiff.  To
pay  such  obligations  Stroud  exhausted  all  the  partnership  assets  he
could  reduce  to  money  amounting  to  $4,307.08,  of  which  $2,028.64
was  derived  from  accounts  receivable  and  $2,278.44  from  a  sale  of
merchandise  and  fixtures,  and  used  over  $7,700.00  of  his  personal
money.  Stroud  has  left  of  the  partnership  assets  only  uncollected  ac-
counts  in  the  sum  of  $2,868.77,  practically  all  of  which  are  considered
uncollectible.

Stroud  has  not  attempted  to  rescind  the  dissolution  agreement,  and
has  tendered  plaintiff,  and  still  tenders  it,  one-half  of  the  $171.04
claimed  by  it.

From  a  judgment  that  plaintiff  recover  from  the  defendants  $171.04
with  interest  and  costs,  Stroud  appeals  to  the  Supreme  Court.

*Luther Hamilton for defendant, appellant.*
*George W. Ball for plaintiff, appellee.*

PARKER,  J.   C.  N.  Stroud  and  Earl  Freeman  entered  into  a  gen-
eral  partnership  to  sell  groceries  under  the  firm  name  of  Stroud's
Food  Center.  There  is  nothing  in  the  agreed  statement  of  facts  to
indicate  or  suggest  that  Freeman's  power  and  authority  as  a  general
partner  were  in  any  way  restricted  or  limited  by  the  articles  of  part-
nership  in  respect  to  the  ordinary  and  legitimate  business  of  the  part-
nership.  Certainly,  the  purchase  and  sale  of  bread  were  ordinary  and
legitimate  business  of  Stroud's  Food  Center  during  its  continuance  as
a  going  concern.

Several  months  prior  to  February  1956  Stroud  advised  plaintiff
that  he  personally  would  not  be  responsible  for  any  additional  bread
sold  by  plaintiff  to  Stroud's  Food  Center.  After  such  notice  to  plain-
tiff,  it  from  6  February  1956  to  25  February  1956,  at  the  request  of
Freeman,  sold  and  delivered  bread  in  the  amount  of  $171.04  to  Stroud's
Food  Center.

In  *Johnson v. Bernheim,*  76  N.C.  139,  this  Court  said:  "A  and  B
are  general  partners  to  do  some  given  business;  the  partnership  is,
by  operation  of  law,  a  power  to  each  to  bind  the  partnership  in  any
manner  legitimate  to  the  business.  If  one  partner  go  to  a  third  per-
son  to  buy  an  article  on  time  for  the  partnership,  the  other  partner
cannot  prevent  it  by  writing  to  the  third  person  not  to  sell  to  him
on  time;  or,  if  one  party  attempt  to  buy  for  cash,  the  other  has  no
right  to  require  that  it  shall  be  on  time.  And  what  is  true  in  regard

to buying is true in regard to selling. What either partner does with a third person is binding on the partnership. It is otherwise where the partnership is not general, but is upon special terms, as that purchases and sales must be with and for cash. There the power to each is special, in regard to all dealings with third persons at least who have notice of the terms." There is contrary authority: 68 C.J.S., Partnership, pp. 578-579. However, this text of C.J.S. does not mention the effect of the provisions of the Uniform Partnership Act.

The General Assembly of North Carolina in 1941 enacted a Uniform Partnership Act, which became effective 15 March 1941. G.S. Ch. 59, Partnership, Art. 2.

G.S. 59-39 is entitled PARTNER AGENT OF PARTNERSHIP AS TO PARTNERSHIP BUSINESS, and subsection (1) reads: "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." G.S. 59-39(4) states: "No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction."

G.S. 59-45 provides that "all partners are jointly and severally liable for the acts and obligations of the partnership."

G.S. 59-48 is captioned RULES DETERMINING RIGHTS AND DUTIES OF PARTNERS. Subsection (e) thereof reads: "All partners have equal rights in the management and conduct of the partnership business." Subsection (h) thereof is as follows: "Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners."

Freeman as a general partner with Stroud, with no restrictions on his authority to act within the scope of the partnership business so far as the agreed statement of facts shows, had under the Uniform Partnership Act "equal rights in the management and conduct of the partnership business." Under G.S. 59-48(h) Stroud, his co-partner, could not restrict the power and authority of Freeman to buy bread for the partnership as a going concern, for such a purchase was an "ordinary matter connected with the partnership business," for the purpose of its business and within its scope, because in the very nature of things Stroud was not, and could not be, a majority of the

partners. Therefore, Freeman's purchases of bread from plaintiff for Stroud's Food Center as a going concern bound the partnership and his co-partner Stroud. The quoted provisions of our Uniform Partnership Act, in respect to the particular facts here, are in accord with the principle of law stated in *Johnson v. Bernheim, supra;* same case 86 N.C. 339.

In Crane on Partnership, 2nd Ed., p. 277, it is said: "In cases of an even division of the partners as to whether or not an act within the scope of the business should be done, of which disagreement a third person has knowledge, it seems that logically no restriction can be placed upon the power to act. The partnership being a going concern, activities within the scope of the business should not be limited, save by the expressed will of the majority deciding a disputed question; half of the members are not a majority."

*Sladen v. Lance,* 151 N.C. 492, 66 S.E. 449, is distinguishable. That was a case where the terms of the partnership imposed special restrictions on the power of the partner who made the contract.

At the close of business on 25 February 1956 Stroud and Freeman by agreement dissolved the partnership. By their dissolution agreement all of the partnership assets, including cash on hand, bank deposits and all accounts receivable, with a few exceptions, were assigned to Stroud, who bound himself by such written dissolution agreement to liquidate the firm's assets and discharge its liabilities. It would seem a fair inference from the agreed statement of facts that the partnership got the benefit of the bread sold and delivered by plaintiff to Stroud's Food Center, at Freeman's request, from 6 February 1956 to 25 February 1956. See *Guano Co. v. Ball,* 201 N.C. 534, 160 S.E. 769. But whether it did or not, Freeman's acts, as stated above, bound the partnership and Stroud.

The judgment of the court below is
Affirmed.

RODMAN, J., dissents.